# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00C 5568 | **DATE** | 4/20/01 |
| **CASE TITLE** | Sophia Kecala v. Minnesota Life Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry]    Enter Memorandum Opinion and Order.  Plaintiff's motion for Summary Judgment [Doc. 9-1] is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **3** number of notices | **Document Number** |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | APR 2 4 2001 date docketed | **31** |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 4-23-01 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOPHIA KECALA,                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        No. 00 C 5568
                                  )
MINNESOTA LIFE INSURANCE CO.,     )        Judge Rebecca R. Pallmeyer
                                  )
        Defendant.                )
                                  )

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Plaintiff, Dr. Sophia Kecala, seeks a declaration that she is entitled to

disability benefits pursuant to an insurance policy with Defendant Minnesota Mutual Life

Insurance Company. Plaintiff claims Defendant's interpretation of the policy and denial of

coverage was unreasonable and in bad faith. She now seeks summary judgment. For the

following reasons, Plaintiff's motion is denied.

## FACTS

Plaintiff Sophia Kecala is a board certified psychiatric medical doctor residing in

Lemont, Illinois. (Plaintiff's Rule 12(m)[1] Statement (hereinafter, "Pltf.'s 12(m)") ¶ 1.) In

March 1986, Minnesota Mutual issued disability insurance policy No. 1-672-399H (the

---

[1]     The parties have labeled their statements of fact using references to the
previous version of the court's' Local Rules. Those rules have been amended, effective
September 1, 1999, replacing Local Rule 12(M) and 12(N) with Local Rule 56.1. Based on
the parties' filings, however, the court will use the old nomenclature for the sake of
clarity.

"Policy") to Plaintiff. (*Id.* ¶ 3.) On March 19, 1997, Plaintiff's premiums on this policy were paid in full. (*Id.* ¶ 5.) A premium on the policy was due on March 21, 1997, but Plaintiff failed to pay it. (Minnesota Life's Response to Rule 12(m) Statement and Additional Facts (hereinafter ("12(n) Response"), at 4.) The Policy provides a 31-day grace period in which the Plaintiff may pay the premium due and not lose coverage (Policy, Ex. B to Pltf.'s 12(m), at 85-501), but Plaintiff made no further payments and the policy expired on April 22, 1997. (Peterson Affidavit ¶ 4, Ex. 2 to 12(n) Resp.)

On May 19, 1997, Plaintiff sought reinstatement of her policy. In her application for reinstatement, Dr. Kecala certified that she "had not seen a health care practitioner, suffered from an injury, been sick or disabled since premium paid-to-date of 3/21/97." (Health and Insurability Statement of 5/19/97, Ex. 3 to 12(n) Resp.)

In fact, however, Plaintiff had been involved in an automobile accident on March 19, 1997. (Pltf.'s 12(m) ¶ 10.) Because of injuries allegedly sustained from this accident, Plaintiff submitted a claim for disability benefits under the Policy on September 20, 1997. (Id. ¶¶ 11-12.) Plaintiff submitted to Defendant a Statement of Disability from Dr. Charles Lo and an Attending Physician's Statement from Dr. Dorothy Prusek. Both documents indicated that Plaintiff's injuries were caused by her auto accident. (Id. ¶¶ 16-17; Physicians' Statements, Ex. F and G to Pltf.'s 12(m).) In an affidavit filed with this court, Plaintiff states that she discontinued her medical practice at Elmhurst Memorial Hospital on April 25, 1997. (Kecala's Aff. ¶ 5, Ex. H to Pltf.'s 12(m).)

On August 24, 1999, Defendant denied Plaintiff's claim for disability benefits. (Pltf.'s

12(m) ¶ 13.) In his four-page letter explaining this decision, Chris Peterson of Minnesota Life noted that Plaintiff's representations for reinstatement on the Health and Insurability Statement did not accurately reflect her medical history. (Peterson Letter, Ex. E to Pltf.'s 12(m), at 2.) Peterson cited Plaintiff's visits to physicians on April 3, 1997, April 4, 1997, April 17, 1997, April 19, 1997, and May 8, 1997, visits that are inconsistent with her statement that she had not seen a healthcare practitioner, suffered from an injury, been sick or disabled since March 21, 1997. Minnesota Life deemed the Policy void as of March 21, 1997 because, had Defendant known of the medical treatment she had received, it would not have reinstated the policy. (*Id.* at 2-3.) Because Plaintiff did not become disabled until April 25, 1997, Defendant denied her claim.

## DISCUSSION

The standards that govern the court's consideration of this motion are familiar: Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The interpretation of a written instrument is often suitable for summary judgment, if the instrument is not ambiguous and the court can construe the language without extrinsic evidence. *See, e.g, T.H.E. Ins. Co. v. City of Alton*, 227 F.3d 802, 805 (7th Cir. 2000) (applying Illinois law to insurance contract, citing *John Bader Lumber Co. v. Employers Ins. of Wausau*, 110 Ill. App. 3d 247, 250, 441 N.E.2d 1306, 1307 (1st Dist. 1982)); *Church v. General Motors Corp.*, 74 F.3d 795, 798-99 (7th Cir. 1996) (applying Illinois law). A term is

ambiguous if it is subject to reasonable alternative interpretations. *Bechtold v. Physicians Health Plan*, 19 F.3d 322, 325 (7th Cir. 1994). Under Illinois law, any ambiguities in the provisions of an insurance policy will be construed against the drafter of the instrument, the insurer, and in favor of the insured. *Heller v. Equitable Life Assurance Soc.*, 833 F.2d 1253, 1256 (7th Cir. 1987). Nevertheless, if the language of the policy is facially clear and unambiguous, the court need not look beyond the language of the policy. *Chimiel v. J.C. Penny Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998).

Plaintiff argues that, under the terms of the Policy, she is entitled to benefits because the injuries she sustained on March 19, 1997 are covered regardless of whether the Policy lapsed on March 21, 1997. The Plaintiff relies on the definition section of the Policy which defines an injury as "[a]n accidental bodily injury you sustain while this policy is in force." (Policy, at 3.) It is undisputed that Plaintiff suffered injuries in the March 19, 1997 accident, while the Policy remained in force.

Significantly, however, the Policy does not define the disability that will support a claim for benefits as equivalent to an injury or illness. Here is the Policy's definition of disability:

> Whenever we use the word "disability" or "disabled" in this policy we mean that due to sickness or injury you are unable to perform the substantial and material duties of your regular occupation.
> If the insured retires from gainful employment prior to his 65th birthday and if prior to his 65th while so retired the insured becomes disabled, the insured will be considered to be disabled as a result of such sickness or injury if the insured is unable to engage in the normal activities of a retired person of like age and sex.

4

(*Id.* at 1E.) "Substantial and material duties" is another defined term, described as "those duties which account for 50% or more of your prior average earned income from your regular occupation." (*Id.* at 3.) Disability benefits are payable, under the terms of the policy, if certain conditions are met:

> You will receive the monthly income benefit if you suffer a continuous period of disability due to sickness or injury which extends beyond the waiting period. Your disability must begin prior to your age 65. This policy must also be in force.

(Disability Income Policy, at 3.)

Defendant argues that this language is unambiguous and requires the determination that Plaintiff is not entitled to benefits. In order for an insured to be eligible for disability benefits under the Policy language, she must suffer from a disability caused by a sickness or injury, while the Policy is in force. In other words, disability may be *caused* by an injury and/or sickness; but the Policy does not provide that benefits from a disability income policy are payable at the time when an insured is injured. An individual may well be injured but not disabled. The Policy language makes clear that the disability benefit is payable only where the insured suffers a loss of income due to a disability. Although Plaintiff suffered an injury during the effective term of her policy, Defendant concluded she did not become disabled until after it lapsed, and therefore is entitled to no benefits.

In Plaintiff's view, the language of the Policy is susceptible to two different meanings, and any ambiguity must be construed in her favor. (Plaintiff's Reply to her Motion for Summary Judgment (hereinafter "Plaintiff's Reply"), at 5.) She notes that the waiting period

5

for her policy was set at 90 days. (Policy at 1A.) Because the Policy does not state that the *waiting period* must occur while the Policy is in force, Plaintiff contends the language is subject to two reasonable interpretations. Additionally, the Plaintiff argues that the last sentence, "[t]his policy must be in force," is vague. (Plaintiff's Reply, at 6.) This court disagrees. The plain and unambiguous reading of the provision clearly states that in order for the insured to recover disability benefits, a disability must begin prior to age 65 *and* the policy must be in force. That is, the Policy identifies the triggering event as the disability, not the injury or illness that may have caused it.

In arguing that her right to disability income benefits arose as of the date of her March 21, 1997 injury, Plaintiff ignores the plain language of the Policy. She cites to an Arkansas decision, *Watts v. Minnesota Mut. Life Ins. Co.*, 402 S.W. 2d 111, 112 (1966), but the facts of that case are readily distinguishable. In *Watts,* the insured became disabled on May 16, 1963 and died in October. *Id.* His widow sought death benefits under a group policy that provided for such benefits where an employee dies within a year of becoming disabled. Because the decedent's employer had stopped paying premiums and the insurer had cancelled the policy between May and October, defendant insurer refused to pay the death benefit. On appeal from summary judgment in favor of defendant insurer, plaintiff argued that under the group policy terms, the decedent's life insurance coverage vested on the date he became disabled. The Arkansas court agreed, and reversed the denial of benefits. *Id.* at 113. Defendant invoked broad policy provisions that appeared to authorize automatic termination of benefits when the group policy terminated, but the court found those provisions

inconsistent with more specific language that dictated that an employee's insurance would be extended for one year after the onset of total disability.

Plaintiff argues that under the rationale of *Watts*, her right to coverage under the Policy vested on the date she was injured, while the Policy was in effect. (Plaintiff's Reply, at 9.) In *Watts*, as here, the policy provided for vesting of rights as of the time that the employee became disabled, but it was undisputed in that case that the employee became disabled while the policy was still in effect. Indeed, the court notes the possibility that Mr. Watts, who became totally disabled from cancer in May 1963, may well have suffered from that disease months before it rendered him unable to work.

In this case, Defendant contends that Dr. Kecala was not rendered disabled as of March 19, 1997, the date of her accident and injury. According to Defendant, she continued to perform "the substantial and material duties of her regular occupation" until April 25, 1997. (12(n) Additional Facts ¶ 7.) Plaintiff denies this (Plaintiff's Response to Defendant's Statement of Additional Facts ¶ 7), but does not dispute the fact that she maintained her medical practice until that date. Nor does Plaintiff explain how her suggestion that she was disabled as of March 19, 1997 can be harmonized with her certification, in a May 19, 1997 application for reinstatement of the Policy, that she "has not seen a health care practitioner, suffered from an injury, been sick *or disabled since the premium paid-to date of 3-21-97.*" (Reinstatement Certification, Ex. 3 to 12(n) Resp, emphasis supplied.)

The circumstances of this case are indeed regrettable. It appears that Plaintiff suffered serious injuries in an accident on March 19, only two days before her disability insurance

premium fell due. A trained doctor herself, Plaintiff might well have recognized that these injuries might ultimately disable her from working. Her failure to catch up by paying the premium during the 31-day grace period – a period that began *after* the injury but before she closed her practice – was careless at best and foolish at worst. She compounded her difficulty by falsely certifying that she had not been injured, seen a doctor, or been disabled from March 21 until May 19. Defendant asserts that "Had our underwriters been aware of this treatment [Plaintiff received in April and May 1997], Minnesota Life would not have reinstated Dr. Kecala's disability policy." (Peterson Letter, Ex. E to 12(n) Resp., at 2.)

The issue before this court is whether Plaintiff's March 19, 1997 injury constitutes a disability within the meaning of the Policy. The court concludes it does not.

## CONCLUSION

Because Plaintiff has failed to establish that there are no disputes of fact concerning her claim that she was disabled prior to the lapse of her Policy on March 21, 1997, her motion for summary judgment (Doc. No. 9-1) is denied.

ENTER:

Dated: April 20, 2001

REBECCA R. PALLMEYER
United States District Judge